# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41032

United States Court of Appeals
Fifth Circuit

**FILED**

May 30, 2017

Lyle W. Cayce
Clerk

DONNA RHEA,

Plaintiff–Appellant,

versus

ALAN RITCHEY, INCORPORATED WELFARE BENEFIT PLAN;
ALAN RITCHEY, INCORPORATED,

Defendants–Appellees.

Appeal from the United States District Court
for the Eastern District of Texas

Before SMITH, PRADO, and GRAVES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Donna Rhea was the beneficiary of an employee benefit plan organized under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq*. Rhea suffered injuries from medical malpractice. The plan covered some of her medical expenses. After she settled the malpractice claim, the plan sought reimbursement.

No. 16-41032

The plan used a single document as both its summary plan description and its written instrument. That document had a reimbursement provision. Rhea refused to reimburse the plan, claiming that it did not have an enforceable written instrument. She sought a declaratory judgment and appeals an adverse summary judgment and attorneys' fees. Finding no error, we affirm.

I.

Alan Ritchey, Inc. ("Alan Ritchey"), is the sponsor and administrator of an employee benefit program called the "Alan Ritchey, Inc. Welfare Benefit Plan" ("the Plan"), which purports to comply with ERISA. Rhea, the wife of an Alan Ritchey employee, was a beneficiary of the Plan. In November 2011, Rhea underwent surgery and alleged injury from malpractice. The Plan covered $71,644.77 of her medical expenses. After she settled the malpractice claim for more than that amount, the Plan sought reimbursement.

As a beneficiary, Rhea received a document entitled "Summary Plan Description UnitedHealthcare Choice Plus Silver Plan for Alan Ritchey, Inc." The summary plan description ("SPD") contains reimbursement and subrogation language. It states that "if a third party causes a Sickness or Injury for which you receive a settlement, judgment, or other recovery, you must use those proceeds to fully return to the Plan 100% of any Benefits you received for that Sickness or Injury." The SPD adds, "If the Plan incurs attorneys' fees and costs in order to collect third party settlement funds held by you or your representative, the Plan has the right to recover those fees and costs from you."

The SPD alludes to the existence of a separate "official Plan Document" and provides that "[i]n the event of any discrepancy between this Summary Plan Description and the official Plan Document, the Plan Document shall govern." But when the Plan paid Rhea's medical expenses, the SPD was the only

2

No. 16-41032

document describing a beneficiary's rights and obligations under the Plan.[1] When Rhea's attorneys asked to see the "official Plan Document," defendants produced an affidavit signed by Charla Moss, Alan Ritchey's benefits administrator, stating that the SPD "is the Plan document that has been accepted, ratified, and maintained by the Plan Sponsor, that contains all of the ERISA-required plan provisions, and operates as the Plan's official plan document."

Rhea has refused to reimburse the Plan for the $71,644.77 it spent on her medical treatment. She claims that Alan Ritchey did not have an ERISA-compliant written instrument in place when the Plan paid her medical expenses. As a result, she says, the Plan does not have a right to be reimbursed. Rhea also accuses Alan Ritchey of making "knowing misrepresentations" about the Plan's compliance with ERISA. Defendants claim that the Plan was ERISA-compliant at all relevant times and that it established a right to be reimbursed for Rhea's medical expenses.

In September 2013, Rhea sued Alan Ritchey and the Plan for a declaratory judgment that she is not required to reimburse the Plan. Defendants filed a counterclaim requesting equitable relief and damages under ERISA. Both sides moved for summary judgment. The magistrate judge ("MJ") recommended granting summary judgment and $31,415.50 in attorneys' fees and costs to defendants. The district court adopted those recommendations and entered final judgment against Rhea, who appeals.

## II.

ERISA requires plan administrators to provide SPDs to beneficiaries. 29 U.S.C. § 1024(b)(1). An SPD must "reasonably apprise [plan] participants

---

[1] Alan Ritchey later produced a document called the "Alan Ritchey Employee Benefit Plan."

No. 16-41032

and beneficiaries of their rights and obligations under the plan" and must be "written in a manner calculated to be understood by the average plan participant." *Id.* § 1022(a). ERISA also mandates that plans "be established and maintained pursuant to a written instrument." *Id.* § 1102(a)(1). A plan's written instrument sets forth its terms and must do the following:

(1) provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of this subchapter,

(2) describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan (including any procedure described in section 1105(c)(1) of this title),

(3) provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan, and

(4) specify the basis on which payments are made to and from the plan.

*Id.* § 1102(b). Courts often refer to written instruments as "plan documents."

## A.

When the Plan paid Rhea's medical expenses, its SPD was functioning as both an SPD and a written instrument. That is nothing peculiar: Plan sponsors commonly use a single document to satisfy both requirements,[2] and courts have blessed the practice.[3] For example, we have treated an SPD as a

---

[2] *See* Lee T. Polk, *Summary Plan Descriptions*, 2 ERISA PRAC. & LITIG. § 12:38.

[3] *See, e.g., Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan v. Montanile*, 593 F. App'x 903, 911 (11th Cir. 2014) ("We hold that the NEI Summary Plan Description constitutes a written instrument that sets out enforceable 'terms of the plan.'"), *rev'd on other grounds*, 136 S. Ct. 651 (2016); *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir. 2011) ("[T]he SPD does not conflict with the Plan or present terms unsupported by the Plan; rather, it *is* the Plan."); *Wise v. Plan Adm'r, IBM Benefits Plan for Retired Emps.*, No. 3:13CV1591 JBA, 2014 WL 3849975, at *4 (D. Conn. Aug. 5, 2014) (explaining that when there is no separate written instrument, "the SPD can legally serve as the formal governing plan document"); *Henderson v. Harford Life & Accident Ins.*, No. 2:11CV187DAK, 2012 WL 2419961, at *5 (D. Utah June 26, 2012) ("[T]he terms of the SPD govern because there are no other ma[s]ter plan documents."); *Campbell v. Chevron Phillips Chem. Co.*, 587 F. Supp. 2d 773, 782 (E.D. Tex. 2006) ("[O]ne document can serve as

No. 16-41032

plan's written instrument because there was "no alternative plan document in the record."[4]

Rhea claims that *CIGNA Corp. v. Amara*, 563 U.S. 421, 437–38 (2011), requires a plan's SPD and written instrument to be separate documents. But courts have consistently rejected that reading of *Amara*.[5] To the contrary, where a plan has an SPD but no separate written instrument, the SPD can

both the 'summary plan description' required under 29 U.S.C. § 1022(b) and the 'written instrument' required under 29 U.S.C. § 1102(a)(1)." (quoting *Hamilton v. Air Jamaica, Ltd.*, 750 F. Supp. 1259, 1265 (E.D. Pa. 1990)),*rev'd on other grounds*, 945 F.2d 74 (3d Cir. 1991)).

[4] *Dudley v. Sedgwick Claims Mgmt. Servs. Inc.*, 495 F. App'x 470, 471 n.1 (5th Cir. 2012).

[5] *See, e.g., Bd. of Trs. v. Moore*, 800 F.3d 214, 220 (6th Cir. 2015) ("Nothing in *Amara* prevents a document from functioning both as the ERISA plan *and* as an SPD . . . ."); *Montanile*, 593 F. App'x at 910 ("*Amara* only precludes courts from enforcing summary plan descriptions . . . where the terms of that summary *conflict* with the terms specified in other, governing plan documents."); *Eugene S.*, 663 F.3d at 1131 (stating that an SPD can function as a plan's written instrument when there is no alternative written instrument, notwithstanding *Amara*); *JDA Software Inc. v. Berumen*, No. CV-14-01565-PHX-DLR, 2016 WL 6143188, at *3 (D. Ariz. Oct. 21, 2016) ("*Amara* . . . did not involve a consolidated plan document, and courts that have addressed consolidated plans consistently have found that an SPD can serve as the governing plan document if it is the only document detailing the participants' rights and obligations and contains all necessary information."); *Jenkins v. Grant Thornton LLP*, No. 0:13-CV-60957, 2015 WL 349275, at *1 (S.D. Fla. Jan. 23, 2015) (citation omitted) ("A plethora of authority exists for the proposition that (i) the holding in *Amara* was specifically targeted towards situations where a summary plan document *conflicts* with a master plan document and (ii) *Amara* does not address situations where a summary document is the *only* plan document."), *aff'd*, 667 F. App'x 754 (11th Cir. 2016) (per curiam), *cert. denied*, 137 S. Ct. 1070 (2017); *L&W Assocs. Welfare Benefit Plan v. Estate of Wines ex rel. Wines*, No. 12-CV-13524, 2014 WL 117349, at *6 (E.D. Mich. Jan. 13, 2014) ("*Amara* does not support the broad proposition urged by the Estate, i.e. that an SPD can never serve as an ERISA plan document."). One Florida district court seemed to endorse Rhea's reading of *Amara*:

> Although the Eleventh Circuit has previously found that a summary plan description is part of the plan and sufficient to confer discretion on an administrator . . . such decisions have been called into question by the Supreme Court's recent holding that a summary plan description is *not* the plan, and courts may not give legal effect to provisions in an [sic] summary plan description.

*Wilson v. Walgreen Income Prot. Plan*, 942 F. Supp. 2d 1213, 1248 n.26 (M.D. Fla. 2013). But the following year, the Eleventh Circuit construed *Amara* much more narrowly. *See Montanile*, 593 F. App'x at 910.

5

serve as the plan's written instrument.

*Amara* arose from a dispute between CIGNA and its pension plan's beneficiaries. Until 1997, CIGNA had a traditional defined-benefit pension plan. It issued an SPD announcing changes while assuring beneficiaries that the new plan would provide "the same benefit security" with "steadier benefit growth." *Id.* at 426–28. Eleven months later, CIGNA rolled out its new written instrument, which reduced benefits considerably. *Id.* at 426–31. The beneficiaries challenged CIGNA's adoption of the new plan. *Id.* at 424.

The United States submitted a brief as *amicus curiae* urging that the (more favorable) terms of the SPD should govern rather than the (less favorable) terms of the written instrument. The Court rejected the premise that SPDs are inherently enforceable: "[W]e cannot agree that the terms of statutorily required plan summaries . . . *necessarily* may be enforced . . . as the terms of the plan itself." *Id.* at 436 (emphasis added). The Court added that a plan's written instrument contains its terms. *Id.* at 436–38.

The present case is factually distinguishable from *Amara.* We are not grappling with a conflict between an SPD and a written instrument but, instead, are deciding whether an SPD can function as a written instrument in the absence of a separate written instrument. As the district court correctly concluded, *Amara* does not bear on these facts.[6]

---

[6] The Court noted the narrowness of its holding, explaining that "our decision rests in important part upon the circumstances present here." *Amara*, 563 U.S. at 425. The language of ERISA and the decision in *Amara* do suggest that it is best to maintain a written instrument, establishing a benefit plan's terms, that is separate and distinct from the SPD. In *Amara* the Court emphasized that SPDs serve a basic objective: "clear, simple communication." *Id.* at 437. "To make the language of a plan summary legally binding could lead plan administrators to sacrifice simplicity and comprehensibility in order to describe plan terms in the language of lawyers." *Id.* at 438. Nevertheless, when a plan's sponsor does not maintain a separate written instrument, we must look to the SPD to define the plan's terms.

No. 16-41032

B.

Rhea claims that the SPD does not comply with § 1102(b) because it does not go into enough depth about how the Plan is funded or how it can be amended.  Here, too, we disagree.

The SPD devotes a few paragraphs to discussing the Plan's amendment procedures.  It explains that the Plan's sponsor reserves the right to amend the Plan without notice, but any amendment must be in writing.  The SPD also provides that "[a]ny provision of the Plan which, on its effective date, is in conflict with the requirements of federal statutes or regulations, or applicable state law provisions not otherwise preempted by ERISA . . . is hereby amended to conform to the minimum requirements of such statutes and regulations."  Rhea describes the SPD's amendment language as "merely a grant of authority to Alan Ritchey, Inc. to makes [*sic*] changes as it chooses without following any procedures whatsoever."

The SPD includes a brief discussion of the Plan's funding.  An addendum to the SPD provides that "[a]ll Benefits under the Plan are paid from the general assets of the Plan Sponsor.  Any required employee contributions are used to partially reimburse the Plan Sponsor for Benefits under the Plan."  The same section includes a short description of how employee contributions are calculated.  Elsewhere, the SPD instructs Plan participants to contact their benefits representatives for more information about contributions.  The SPD does not mention its source of funding: the Alan Ritchey, Inc. Employee Benefit Plan Trust (though it does name "Alan Ritchey, Inc." as the plan sponsor).

Rhea is right that the SPD does not lay out complex amendment or funding procedures.  But ERISA does not require written instruments to set forth complex procedures.  In fact, the Supreme Court has approved of an amendment procedure less detailed than the one in this case.  *See Curtiss-*

7

No. 16-41032

*Wright Corp. v. Schoonejongen*, 514 U.S. 73, 79–80 (1995). Given that precedent, it is unlikely that the Court would find the amendment procedure here to be lacking. Likewise, the SPD's discussion of the Plan's funding is sufficient to satisfy ERISA's requirements.

C.

Rhea claims that the SPD was never adopted as the Plan's written instrument. But when an SPD is a plan's only plausible written instrument, courts assume that the SPD is the written instrument. In *Feifer v. Prudential Ins. Co. of America*, 306 F.3d 1202, 1208–10 (2d Cir. 2002), the court concluded that an SPD's terms were controlling even though the plan administrator had argued otherwise.[7] The two California district court cases that Rhea cites for support are factually distinguishable from the instant case: Both concerned SPDs that conflicted with other plan documents.[8] There is no evidence in the record that Alan Ritchey adopted a document besides the SPD as the Plan's written instrument during the relevant time period.

D.

The Plan's SPD references an "official Plan Document" that does not exist. Defendants did not inform Rhea that they considered the SPD to be the official plan document until her lawyers asked to see the plan document. Rhea claims that defendants "lied" to her and therefore should not be able to enforce the SPD as the plan document. For support, Rhea cites cases holding that plan administrators breached their duty of loyalty to beneficiaries when they lied or

---

[7] *See, e.g., Admin. Comm. of Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Gamboa*, 479 F.3d 538, 544 (8th Cir. 2007) ("Where no other source of benefits exists, the summary plan description *is* the formal plan document, regardless of its label." (citation omitted)).

[8] *See Mull v. Motion Picture Indus. Health Plan*, 51 F. Supp. 3d 910 (C.D. Cal. 2014); *Ingorvaia v. Reliastar Life Ins.*, 944 F. Supp. 2d 964 (S.D. Cal. 2013).

No. 16-41032

misrepresented material facts.[9]

Though we have never addressed this issue, at least one other circuit has held that an SPD that defers to a non-existent plan document can be enforced as the plan's governing text. In *Feifer*, 306 F.3d at 1209, the Second Circuit held that an SPD that stated that it was "not intended to cover all details of the Plan" and that the "actual provisions of the Plan will govern" still qualified as the plan document in the absence of a separate written instrument.[10] Rhea has not presented evidence that defendants made intentional misrepresentations and has not cited any caselaw suggesting that an ERISA plan administrator breaches its duty of loyalty when it includes such an errant disclaimer somewhere in a plan document. Most importantly, and fatal to her position, Rhea has not demonstrated how this misrepresentation is material or detrimental to her interest. As the MJ observed, including the disclaimer in the SPD was "sloppy," but the disclaimer does not render the Plan's terms unenforceable.

E.

We agree with the MJ's conclusion that the equities favor the defendants. Rhea had a pre-existing obligation to reimburse the Plan for payments it made for her medical expenses in the event she received a third-party recovery. The SPD's errant disclaimer does not tip the balance of the equities in her favor. When Rhea settled her malpractice claim, an equitable lien by

---

[9] *See, e.g., Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) (citation omitted) ("[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA."); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 424–25 (5th Cir. 2003) (noting that employers have "a fiduciary duty to refrain from misrepresentations" regarding "the future of a participant's plan benefits").

[10] *See also Gamboa*, 479 F.3d at 544–45 (stating that a document can serve as a plan's written instrument even if it is mislabeled).

No. 16-41032

agreement was created.[11]  Defendants are entitled to reimbursement.

## III.

The district court adopted the MJ's recommendation to award $29,412 in attorneys' fees and $2,003.50 in court costs to defendants.  The MJ found that the fee award was appropriate under 29 U.S.C. § 1132(g)(1), which gives discretion to award reasonable attorneys' fees and court costs in ERISA cases.  This court reviews an ERISA fee award for abuse of discretion.[12]  There is no abuse here.

To determine whether to award fees under § 1132(g)(1), we weigh the factors in *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980).[13]  Those factors are as follows:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Id.* at 1266 (footnote omitted).

In his report on attorneys' fees and court costs, the MJ considered each

---

[11] *See ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 527–28 (5th Cir. 2013) (en banc).

[12] *See Dial v. NFL Player Supplemental Disability Plan*, 174 F.3d 606, 613 (5th Cir. 1999).

[13] *See, e.g.*, 1 *Lincoln Fin. Co. v. Metro. Life Ins.*, 428 F. App'x 394, 395 (5th Cir. 2011) (per curiam) ("Once a district court determines that a party is eligible for a fee award under § 1132(g)(1), a district court may consider whether fees are appropriate under the factors outlined in [*Iron Workers*].").

No. 16-41032

of these factors, including, most significantly, that Rhea was at least arguably acting in bad faith when she moved to deny the Plan a recovery to which it is contractually entitled.  As the MJ explained, the other factors generally favor a fee award to these defendants.[14]

AFFIRMED.

---

[14] The MJ also cited the SPD's contractual attorneys' fees provision as a justification for fees.  Because the district court did not abuse its discretion by awarding fees under § 1132(g)(1), we do not address the validity of the contractual provision.

11