**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2094
_____

FRANK REED,
                              Appellant

v.

*CITIGROUP INC, as Plan Sponsor of the Citigroup Disability Plan;
METROPOLITAN LIFE INSURANCE COMPANY, a New York Corporation

(*Amended Per Clerk Order of 5/28/15)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-12-cv-02934)
District Judge:  Honorable Michael A. Shipp
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 23, 2016

Before: FUENTES, VANASKIE and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 7, 2016)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Frank Reed appeals from an order of the United States District Court for the District of New Jersey, which denied his summary judgment motion and granted that of the Defendants. For the reasons that follow, we will vacate the District Court's judgment and remand for further proceedings.

## I.

Because the procedural history of this case and the details of Reed's claims are well known to the parties and set forth in the District Court's memorandum opinion, we need not discuss them at length. Briefly, Reed fell and injured himself on April 9, 2008, at a company-related event. He did not return to work thereafter. Reed initially received salary continuation benefits, and then received long-term disability ("LTD") benefits, through November 3, 2009. At that time, the claim administrator, Metropolitan Life Insurance Company ("MetLife"), discontinued benefits, determining that Reed was no longer disabled as defined by the Citigroup Long-Term Disability Plan ("the Plan"). After exhausting his administrative appeals, Reed filed the complaint at issue here, pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B) ("ERISA").

## II.

We exercise plenary review over a decision granting summary judgment and review the facts in the light most favorable to the nonmoving party. See Miller v. Am.

2

Airlines, Inc., 632 F.3d 837, 844 (3d Cir. 2011).[1]  Summary judgment is appropriate

when "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In examining

the record, the court gives the nonmoving party the benefit of all reasonable inferences

from the record."  Horn v. Thoratec Corp., 376 F.3d 163, 166 (3d Cir. 2004).

While we exercise plenary review in determining whether summary judgment was

warranted, the underlying standard of review in this case is much narrower.  Where, as

here, the benefits plan "gives the administrator or fiduciary discretionary authority to

make eligibility determinations, we review its decisions under an abuse-of-discretion (or

arbitrary and capricious) standard."  Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413

(3d Cir. 2011).  The existence of a structural conflict of interest, as is present in this

case,[2] does not change the standard of review; we continue to review the administrator's

discretionary decision for abuse of discretion.  Metro. Life Ins. Co. v. Glenn, 554 U.S.

105, 111 (2008).  But we may consider any possible conflicts as factors in determining

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291.  Although the parties did not (as instructed by the Clerk's October 1, 2015 order) address the issue of whether the District Court finally resolved all counterclaims in the case, we are confident from our review of the record that the order is final, as the District Court resolved all of the claims to the parties' satisfaction and "accomplish[ed] all that the parties asked the court to accomplish."  See Aluminum Co. of Am. v. Beazer E., Inc., 124 F.3d 551, 560 (3d Cir. 1997).

[2] The parties agree that MetLife has a structural conflict of interest:  it is both the insurer and the administrator of the Plan.  See Miller, 632 F.3d at 847-48 (structural conflict of interest must be considered where benefits plan is funded by employer based on actuarial formula).  Reed also argues that there are a number of procedural conflicts.

3

whether the administrator abused its discretion.  See id.; Estate of Schwing v. Lilly

Health Plan, 562 F.3d 522, 525 (3d Cir. 2009).

We begin by considering the structural conflict of interest here.  The District Court

relied on a Declaration by Matthew Hallford, a Claims Specialist at MetLife, to conclude

that MetLife's inherent structural conflict was not important, "because evidence shows

that MetLife took 'active steps to reduce potential bias and to promote accuracy.'"  Dist.

Ct. Op., Dkt. #64 at 22-23 (quoting Glenn, 554 U.S. at 117).[3]  The Court also concluded

that "Reed has provided no evidence raising even an inference that the inherent conflict

here actually influenced MetLife's decision in his case."  Id. at 23.  In contrast, we find

that Reed has pointed to evidence that raises a reasonable inference that MetLife made its

decision based on monetary concerns, rather than the merits of Reed's claim, after

learning that it had been underpaying his claim by approximately $10,000 per month.

The District Court noted that MetLife advised Reed "on February 10, 2009 that his

claim would be denied as there was no documentation supporting medical treatment for

---

[3] Reed objected in the District Court to the Court's reliance on the Declaration,
particularly "because during the administrative process Reed requested on two (2)
occasions that MetLife provide this information and documents regarding its claims
procedure, yet MetLife adamantly refused to do so."  Dkt. #54 at 1-2.  Reed argued that if
such documentation had been provided, he "would have requested additional
documentation, including but not limited to, MetLife's claim procedure manuals that
would have provided proof of the statements made by Matthew Hallford in his
Certification."  Id.  Although a court is allowed to consider extra-record evidence
regarding conflicts of interest, see Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 (3d
Cir. 2010), the District Court may have given improper weight to this extra-record

disability subsequent to October 2008." Dist. Ct. Op., Dkt. #64 at 28. The Court found that the denial could not be based on information regarding the underpayment "because MetLife did not receive notification from Citigroup that Reed's salary should be $263,694 rather than $65,000 until March 6, 2009. (*See* ML 0255)." Id. at n.9. But the record reflects that the February 10, 2009 letter was not an outright denial; instead, it was a warning letter advising Reed that MetLife would deny his claim if he did not provide medical documentation from October 2008 to present. Reed called MetLife on the day that the letter was dated.[4] The claims specialist's record of the call on February 10 states that "ee feels his pymnts are incorrect ee stated er has notified ml of correct amt but pay has not been adjusted." Dkt. 48-7 at 35-36 (ML 0248-49). An entry dated February 11 states, "If EE calls: Advise EE our records confirm his salary is $65,000. If EE has concerns with this amount he needs to speak with HR so they can confirm that is the correct amount that is used to determine LTD benefits." Reed's benefits were not denied until March 13, 2009, see Dkt. 48-13 at 44-45 (ML 0820-21), nearly a month after Reed's call to MetLife that appeared to reference the salary mistake, and several days after the March 6 date of a document (which appears to be a fax from Citigroup's benefits department) informing MetLife that the $263,694 figure was correct. Dkt. 48-13 at 69 (ML 0845). The record certainly does not *prove* that MetLife denied Reed's claims

---

evidence, as Reed was not afforded information in discovery that might have allowed him to rebut it.

[4] In his brief, Reed states that he "alert[ed] my Plan administrator that the amount was wrong in January 2009," but there is not a record of that call in MetLife's log.

based on financial concerns,[5] but at the summary judgment phase, the temporal proximity does raise a reasonable *inference* that monetary concerns were a factor.

As for procedural conflicts, Reed raises two alleged conflicts in his brief.  See Post v. Hartford Ins. Co., 501 F.3d 154, 164 (3d Cir. 2007) (courts must examine procedure by which administrator came to decision to determine whether there is evidence of bias) overruled on other grounds by Schwing, 562 F.3d at 525.  First, he complains of MetLife's failure to order and conduct an independent medical exam ("IME") before denying his claim.  Reed argues that failure to conduct an IME is a procedural irregularity as a matter of law when:  (1) there are subjective symptoms; (2) there is an administrator's reversal of position; (3) the administrator solely relies on a paper review; and (4) the administrator's medical reviewers cherry pick the record.  Appellant's Brief (unnumbered).  We disagree that the matter is so cut and dried.  For one thing, Reed primarily gleans his conclusions from non-precedential cases.  And he reads those cases too broadly.  But we agree that MetLife's failure to order an IME, which it was allowed to do under the Plan, is a factor we can consider in determining whether its decision to terminate benefits was arbitrary or capricious.  Post, 501 F.3d at 166.

---

[5] Indeed, MetLife reinstated Reed's benefits on March 23, 2009, effective March 14, 2009, after he submitted an "initial visit note" from Dr. Steven H. Deschner.  Dkt. 48-13, at 36-37 (ML 0812-0813), leading to an inference that the denial was only because of a lack of documentation.  But one might still infer from the record that MetLife was subjecting Reed's claim to greater scrutiny once it learned of the higher salary amount. (As noted, his claim was once again denied on November 3, 2009.  Dkt. #48-12 at 11-13 (ML 0692-94)).

Second, Reed argues that MetLife's insistence that he apply for Social Security Disability Insurance ("SSDI") benefits conflicts with its decision to terminate his LTD benefits. This argument was not clearly presented in the District Court—there, Reed's attorney appeared to argue that MetLife should have taken into consideration that the Social Security Administration granted Reed disability benefits. This would have been an impossibility, as the benefits were granted well after MetLife denied Reed's claim. But to the extent one could read Reed's argument below as raising his current claim, we agree that there is some apparent conflict in the administrator's insistence that he apply for SSDI benefits while also terminating his LTD benefits. Nevertheless, we give this factor little weight, as the Plan required MetLife to assist Reed in applying for SSDI benefits, and the Plan was structured so that an employee's benefit would be reduced by amounts received from SSDI. Dkt. #48-4 at 3, 28-29 (ML 0111, ML 0136-37). Thus, it would have been irregular for MetLife *not* to assist Reed in applying for SSDI benefits.

### III.

Having established our standard of review, we now consider whether the District Court properly granted summary judgment. Thus, we consider whether MetLife showed that there is no genuine dispute as to any material fact, and showed that it is entitled to judgment as a matter of law; i.e., that given the undisputed facts, and the possible conflicts, its decision to terminate benefits was not arbitrary or capricious. We conclude that there are genuine issues of material fact and that it is not clear from the current record whether MetLife's decision was arbitrary and capricious.

We must first consider which of MetLife's decisions is under review. In ERISA cases, the court's focus must be on the Plan's "final, post-appeal decision," as "[t]o focus elsewhere would be inconsistent with ERISA's exhaustion requirement." Funk v. CIGNA Grp. Ins., 648 F.3d 182, 191 n.11 (3d Cir. 2011), abrogated on other grounds by Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan, 136 S. Ct. 651 (2016). While a court may consider "pre-final decisions as evidence of the decision-making process that yielded the final decision," those decisions "ought merely to inform a court's review of the final decision." Id.

Here, the initial termination letter in this final sequence,[6] dated November 3, 2009, references the Plan's disability definition:

> If you are a member of Class III or IV, "Totally Disabled" or "Total Disability" means that, due to sickness, pregnancy, or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis and you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy.

Dkt. #48-12 at 11, ML0692. The letter then goes on to note, among other things, that Reed did not have injection therapy or physical therapy, did not have new MRI or x-rays done, and "other than the consultation for the chiropractic treatment you have not had any significant treatment." One can infer then, that MetLife terminated Reed's claim for failure to receive "Appropriate Care and Treatment." But the January 21, 2011 letter responding to Reed's appeal from the termination is less clear. Dkt. #48-9 at 80-86,

---

[6] While MetLife terminated Reed's benefits in March 2009, it quickly reinstated them a

8

ML0473-79. While it again sets forth the Plan's disability definition, it does not discuss any failure on Reed's part to receive "appropriate care and treatment." Instead, it focuses on the new medical information that Reed provided to MetLife, and notes its independent consultants' conclusions that there was no documentation to support functional impairment; thus, one may infer that MetLife was now focusing on the second part of the disability definition; i.e., whether Reed would be able to earn 80% of his predisability income in his own occupation. And after Reed submitted more medical evidence in support of his appeal, MetLife issued a final letter, dated May 24, 2011, that does not mention anything about Reed's failure to be under "appropriate care and treatment." Dkt. #48-9 at 11-13, ML0404-07. Once again, the letter notes the conclusions of the independent consultants that "the additional medical information did not alter [their] previous assessment[s] that the medical information does not support functional impairment to preclude Mr. Reed from performing full-time work beyond November 3, 2009."

MetLife's focus in its final decision on the period "beyond November 3, 2009" shows that it was no longer concentrating on Reed's earlier purported failure to be under "appropriate care and treatment."[7] Because the final, post-appeal decision is based on Reed's failure to show a functional impairment precluding him from work, the District

few days later. See supra n.5.

[7] Indeed, given Reed's flurry of medical visits and tests following the November 3 denial, MetLife may have determined that "failure to be under appropriate care and treatment" was no longer a strong reason for denying Reed's claim.

9

Court erred to the extent it concluded that MetLife's termination decision was valid based on Reed's failure to be under "appropriate care and treatment."

Given MetLife's final decision, the appropriate question is whether its conclusion "that medical information does not support functional impairment to preclude Mr. Reed from performing full-time work beyond November 3, 2009," was arbitrary or capricious in light of the fact that it had earlier determined that the medical information Reed had provided *was* sufficient to show that Reed was disabled as defined by the Plan. In other words, was the medical information that Reed provided on administrative appeal different or less substantial than the medical information that MetLife originally accepted in support of his claim? See Miller, 632 F.3d at 849 (reversal of administrator's decision absent meaningful evidence supports arbitrary and capricious finding) (citing Post, 501 F.3d at 164-65, and McOsker v. Paul Revere Life Ins. Co., 279 F.3d 586, 589 (8th Cir. 2002)).

We recognize, of course, that MetLife's "initial payment of [Reed's] benefits does not operate as an estoppel such that [it] can never terminate benefits." See Miller, 632 F.3d at 849. MetLife's termination may have been justified if: (a) the medical evidence Reed provided on appeal was insufficient compared with the evidence he provided when benefits were initially approved; or (b) MetLife, on further review of substantially the same type of medical evidence, determined that it erred in initially accepting such evidence as proof of disability. As these are factually intense inquiries, we conclude that

10

summary judgment was not appropriate, and we will thus vacate the Court's decision as to these claims.

IV.

We next turn to Reed's claims for breach of fiduciary duty and for equitable estoppel and waiver. We have little to add to the District Court's discussion of these claims. We agree that the "breach of fiduciary duty" claim is simply an attempt to repackage the denial of benefits under the Plan, and that Reed's claim for damages for any such breach is not authorized by ERISA, as he is not alleging a loss to the Plan. See Hein v. F.D.I.C., 88 F.3d 210, 222-23 (3d Cir. 1996); 29 U.S.C. § 1109(a). As to Reed's estoppel and waiver claims, we agree that given the Plan's requirements for continued benefits, Reed could not reasonably rely on a screen shot indicating that his claim was approved through October 31, 2031. Reed argues that he did not get the reinstatement letter that the District Court opinion references, see Dkt. #48-13 at 36-37 (ML 0812-13), which indicates the requirements for continuing to receive benefits. But even if he did not receive that particular letter, the record includes other evidence indicating that Reed had notice of the same information. See e.g., letter dated August 27, 2008 ("Monthly benefits will end on the earliest of the following dates . . . the end of the Maximum Benefit Duration . . . the date you are no longer disabled . . . the date you fail to provide us with any of the information listed in the Plan Highlights under Benefits Checklist"), Dkt. #48-16 at 42-43 (ML 1118-19); letter dated February 10, 2009 (stating that if attending physician statement and medical records are not provided "by March 11, 2009,

11

your claim will be closed"), Dkt. #48-14 at 59 (ML 0922). These letters, and the Plan documents themselves, Dkt. #48-4 at 18 (ML 0126), put Reed on notice that he was required to provide information showing that he continued to be disabled under the Plan, and that the Maximum Benefit date was not the only possible time that his benefits could be terminated. We agree with the Court's disposition of these claims, and we will affirm its judgment to that extent.

For the foregoing reasons, we will vacate the District Court's order in part, affirm it in part, and remand for further proceedings.