[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as
*Kisling, Nestico & Redick, L.L.C. v. Progressive Max Ins. Co.,* Slip Opinion No. 2020-Ohio-82.]

NOTICE

This slip opinion is subject to formal revision before it is published in an
advance sheet of the Ohio Official Reports.  Readers are requested to
promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65
South Front Street, Columbus, Ohio 43215, of any typographical or other
formal errors in the opinion, in order that corrections may be made before
the opinion is published.

SLIP OPINION NO. 2020-OHIO-82

KISLING, NESTICO & REDICK, L.L.C., APPELLEE, *v.* PROGRESSIVE MAX INS.
CO. ET AL., APPELLANTS, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it
may be cited as *Kisling, Nestico & Redick, L.L.C. v. Progressive Max Ins. Co.,*
Slip Opinion No. 2020-Ohio-82.]**

*Charging lien—Insurer who settles a personal-injury claim with an accident victim
does not have a duty to distribute a portion of the settlement proceeds to the
victim's former lawyer pursuant to a charging lien.*

(No. 2018-0682—Submitted May 7, 2020—Decided January 16, 2020.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 105287, 2018-Ohio-1207.

_____

**KENNEDY, J.**

{¶ 1} In this discretionary appeal from the Eighth District Court of Appeals,
we consider whether an insurer who settles a personal-injury claim with an accident
victim has a duty to distribute a portion of the settlement proceeds to the victim's

former lawyers pursuant to a charging lien. We hold that an action to enforce a charging lien is an in rem proceeding against a particular fund and that when a matter is resolved by settlement, the fund comes into being at the time the settlement is paid. A discharged law firm cannot call upon the equitable powers of the court to enforce a charging lien against a tortfeasor's insurer when no court action was initiated on behalf of the victim and an out-of-court settlement was paid to the victim. The discharged law firm must instead proceed against its former client for payment. We therefore reverse the judgment of the court of appeals.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} Darvale Thomas was injured in an automobile accident and hired a law firm, appellee, Kisling, Nestico & Redick, L.L.C. ("KNR"), to represent him. Todd Thornton was the alleged tortfeasor whose negligence caused the accident; his insurer was appellant Progressive Southeastern Insurance Company ("Progressive").

{¶ 3} On July 10, 2014, Thomas and KNR entered into a contingent-fee agreement that purported to give KNR a charging lien on the proceeds of any insurance settlement, judgment, verdict award, or property obtained on Thomas's behalf. The contract between Thomas and KNR provides:

> The Attorneys shall receive as a fee for their services, one-quarter (1/4) of the total gross amount of recovery of any and all amounts recovered, and Client hereby assigns said amount to Attorneys and authorizes Attorneys to deduct said amount from the proceeds recovered. Attorney[s] shall have a charging lien upon the proceeds of any insurance proceeds, settlement, judgment, verdict award or property obtained on your behalf.

2

{¶ 4} Negotiations commenced between KNR and Progressive, and Progressive offered to settle the matter for $12,500. Thomas subsequently discharged KNR. On July 9, 2015, KNR informed Progressive that it had been discharged by Thomas and that it was claiming a lien against any settlement funds paid to Thomas by Progressive. But there was no agreement between Progressive and KNR that Progressive would protect any lien. On July 14, 2015, Thomas settled his claims himself for $13,044, and Progressive paid the full settlement amount to Thomas. Thomas did not pay KNR the attorney fees and expenses that KNR claims he owes for its work on the settlement prior to KNR's discharge.

{¶ 5} KNR sued Thomas, Thornton, and Progressive to recover its attorney fees. Regarding Thomas, KNR alleged breach of contract, breach of fiduciary duty, bad faith, quantum meruit, and unjust enrichment. The trial court entered a default judgment against Thomas for attorney fees and expenses. The claims against Thornton were dismissed at KNR's request.

{¶ 6} Regarding Progressive, KNR claimed that it had failed to protect KNR's charging lien. The trial court granted summary judgment in favor of KNR. The court found that Progressive had been negotiating Thomas's claim with KNR and that when Thomas discharged KNR, Progressive received notice from KNR that it was asserting a lien against any settlement funds. The court held that Progressive "had a duty to protect [KNR's] interest in the settlement proceeds" and was "liable for the quantum meruit value of [KNR's] legal services which include litigation expense[s]." The parties stipulated that KNR's fees and expenses totaled $3,411.48.

{¶ 7} On appeal, the Eighth District affirmed the trial court's judgment. The appellate court determined that "Progressive had knowledge of KNR's charging lien before it settled Thomas's claim and, despite this knowledge, distributed the settlement proceeds to Thomas solely." 2018-Ohio-1207, 110

N.E.3d 681, ¶ 19. The court then held that under Ohio law, a charging lien becomes binding on a third party when the party has notice of the lien. *Id.* at ¶ 31.

{¶ 8} On appeal to this court, Progressive asserts two propositions of law:

1. A lawyer's charging lien is an in rem equitable rule of priority that gives a lawyer a right to be compensated out of a fund which is created by the lawyer's services and skills in a pending litigation.

2. R.C. 3929.06 bars a tort claimant's former lawyer from suing a third-party's insurer to enforce a charging lien against a settlement paid by the insurer.

## LAW AND ANALYSIS

{¶ 9} A charging lien is "[a]n attorney's lien on a claim that the attorney has helped the client perfect, as through a judgment or settlement." *Black's Law Dictionary* 1108 (11th Ed.2019). In 1908, this court stated, "There is no statute in this state which gives to an attorney a lien upon his client's cause of action and provides a remedy for the enforcement of such lien." *Pennsylvania Co. v. Thatcher*, 78 Ohio St. 175, 192, 85 N.E. 55, 58 (1908). What was true in 1908 is true today: Ohio—unlike a majority of states, 23 Lord, *Williston on Contracts*, Section 62:11 (4th Ed.2019)—has no statute addressing how and when an attorney's charging lien attaches or how it can be enforced. Instead, in Ohio, charging liens are recognized and enforced under the common law.

{¶ 10} This court has long recognized the viability of charging liens, the philosophical underpinning of which is that an attorney who has not been paid for his or her legal services is entitled to receive payment for those services from a judgment or fund that was created through his or her efforts: "Cases not infrequently arise, in equity, where the court would be as fully warranted in

decreeing compensation to be made out of the fund to be distributed to the attorneys through whose services the same was secured, as to a receiver by whom it has been preserved." *Olds v. Tucker*, 35 Ohio St. 581, 583 (1880). In *Diehl v. Friester*, 37 Ohio St. 473, 477 (1882), this court recognized that

> an attorney may have a claim upon the fruits of a judgment or decree which he has assisted in obtaining, or upon a sum of money which he has collected, and under some circumstances courts will aid him in securing or maintaining such claim. Thus he will be protected in retaining his fee out of money which he has collected for his client.

{¶ 11} In *Cohen v. Goldberger,* 109 Ohio St. 22, 141 N.E. 656 (1923), paragraph one of the syllabus, this court held that the enforcement of a charging lien is an equitable remedy:

> The right of an attorney to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the equity of such attorney to be paid out of the judgment by him obtained, and is upheld on the theory that his services and skill created the fund.

{¶ 12} Generally, four elements must be present for a charging lien to be enforceable: (1) "a valid express or implied contract between the attorney and the client," (2) "a fund recovered by the attorney," (3) "notice of intent to assert a lien," and (4) "a timely assertion of the lien." 2 Rossi, *Attorneys' Fees,* Section 12:13 (3d Ed.2019). The second element ("a fund recovered by the attorney") is a recognition that the enforcement of a charging lien is an equitable remedy; " 'Ohio courts recognize an attorney's equitable right to enforce such a lien,' " *Minor Child of*

*Zentack v. Strong*, 83 Ohio App.3d 332, 334, 614 N.E.2d 1106 (8th Dist.1992), quoting *Mancino v. Lakewood*, 36 Ohio App.3d 219, 224, 523 N.E.2d 332 (8th Dist.1987).

{¶ 13} "Equitable remedies 'are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing * * * rather than a right to recover a sum of money generally out of the defendant's assets.' 4 S. Symons, Pomeroy's Equity Jurisprudence § 1234, p. 694 (5th ed. 1941)." (Ellipsis sic.) *Montanile v. Bd. of Trustees of Natl. Elevator Industry Health Benefit Plan*, __ U.S. __, 136 S.Ct. 651, 658-659, 193 L.Ed.2d 556 (2016). That "particular thing" in the context of a charging lien is the fund created by a judgment or settlement. "Equitable liens * * * are ordinarily enforceable only against a specifically identified fund because an equitable lien 'is simply a right of a special nature *over* the thing * * * so that the very thing itself may be proceeded against in an equitable action.' " (Emphasis and second ellipsis sic.) *Id.* at 659, quoting Symons at 692.

{¶ 14} The charging lien follows the fund, not a particular person. " '[P]roceedings to enforce such [attorney's] lien[s] are considered as proceedings *in rem* and may be enforced only against the proceeds of a judgment secured in the particular case.' " (Brackets sic.) *Rhoads v. Sommer*, 401 Md. 131, 156-157, 931 A.2d 508 (2007), quoting *Hoxsey v. Hoffpauir,* 180 F.2d 84, 87 (5th Cir.1950).

{¶ 15} Ordinarily, the enforceability of a charging lien is dependent on the power of the court in which the fund was created: " ' "An attorney's lien is enforceable through the control the courts have of their judgments and records, and by means of their own process." ' " *Galloway v. Galloway*, 2017-Ohio-87, 80 N.E.3d 1225, ¶ 9 (8th Dist.), quoting *Fire Protection Resources, Inc. v. Johnson Fire Protection Co.,* 72 Ohio App.3d 205, 209, 594 N.E.2d 146 (6th Dist.1991), quoting *Babin v. Royal Indemn. Co.,* 28 Ohio N.P.(N.S.) 148, 153, 1930 WL 2837 (1930). " ' "[U]ntil a judgment is fully executed, the court retains jurisdiction of

the subject matter and the parties for the purpose of hearing any motion affecting such judgment, and if the attorney desires to have his lien established and declared against such judgment, he may apply to the court for that purpose." ' " *Id.*, quoting *Fire Protection Resources* at 209, quoting *Babin* at 153. As far back as 1880, this court has stated that the compensation of the attorneys "should be worked out by application to the court holding the fund, and in which the services were rendered." *Olds*, 35 Ohio St. at 584.

{¶ 16} The fact that an attorney has been discharged from a case does not mean that a charging lien cannot be enforced. Ohio courts have recognized that a party's former attorney may pursue a charging lien by intervening in an action or by filing a motion. *See, e.g., Cuyahoga Cty. Bd. of Commrs. v. Maloof Properties, Ltd.*, 197 Ohio App.3d 712, 2012-Ohio-470, 968 N.E.2d 602, ¶ 20 (8th Dist.). But here, there is no court-created fund or judgment. Thomas never filed a personal-injury lawsuit, and therefore, there was no involvement by a court and there was no existing action in which KNR could pursue its claim to a portion of the fund created by the settlement.

{¶ 17} So KNR instituted its own suit. However, what KNR is really asserting in its claim against Progressive is that it has an equitable interest in the fund created by the settlement. Thus, the key question is whether Progressive ever controlled that fund. The answer to that question depends on when the fund was created. As explained below, in Ohio, a settlement fund is created when the tortfeasor or his insurer pays the agreed-upon amount and receives a release from the victim.

{¶ 18} *Thatcher*, 78 Ohio St. 175, 88 N.E. 55, controls the outcome of this case. In *Thatcher*, Mattison, who had been injured in a railroad accident, hired a lawyer, Thatcher, to handle his personal-injury claim against the railroad. Mattison agreed to pay Thatcher one-third of any settlement of his claim and assigned him a corresponding one-third interest in his claim. Thatcher notified the railroad that he

had been assigned an interest in the claim and began negotiations. But while Thatcher was temporarily out of town, Mattison took matters into his own hands and settled the claim himself for $3,000. He received the entire $3,000 from the railroad and paid Thatcher only $300. Thatcher sued the railroad for the portion of his legal fees that Mattison did not pay—the additional $700 that would have been due to Thatcher under the fee agreement. This court held that Thatcher could not seek equitable relief against the railroad, since it had never held the fund that Thatcher sought his recovery from. This court explained:

> "Where a composition is made between the tort-feasor and the person wronged, on the basis of a payment for a release, the fund does not come into existence until the payments and the release are simultaneously exchanged. Then the fund thus created is in the hands of the releasor, and the assignee may follow it there; but it never existed in the hands of the releasee." *Weller v. Jersey City, Hoboken & Paterson St. Ry. Co.*, 66 N. J. Eq. 11, 18-19, 57 Atl. 730, 733 [1904].

*Id.* at 191-192.

{¶ 19} The present case involves a similar situation: the fund was not created until Progressive paid the settlement to Thomas and received a release from him. But at that point, the money was out of Progressive's hands. To allow a charging-lien claim against Progressive would permit the charging lien to be satisfied outside the property interest KNR had in the settlement proceeds. KNR had to proceed against its former client, Thomas, for payment.

{¶ 20} "An attorney's special or charging lien is a nonstatutory, common law equitable lien arising out of the express agreement between an attorney and a client that the attorney receive a specified amount of the recovery in a case." *Rust*

*v. Harris-Gordon*, 6th Dist. Lucas No. L-97-1415, 1998 WL 526774, \*1 (Aug. 21, 1998). An equitable remedy awards a plaintiff particular funds or property in the defendant's possession—it does not award general damages. " 'Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies "are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled." ' D. Dobbs, *Handbook on the Law of Remedies* 135 (1973)." (Emphasis sic.) *Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.*, 62 Ohio St.3d 97, 105, 579 N.E.2d 695 (1991), quoting *Maryland Dept. of Human Resources v. Dept. of Health & Human Servs.*, 763 F.2d 1441, 1446 (D.C.Cir.1985). Here, Progressive never had control of the fund to which KNR claims partial entitlement. Therefore, KNR cannot seek equitable relief against Progressive.

**{¶ 21}** Because we conclude that KNR has no viable charging-lien claim against Progressive, Progressive's second proposition of law is moot and we need not address it.

## CONCLUSION

**{¶ 22}** In this case, a discharged law firm sought to enforce a charging lien against a tortfeasor's insurer for the law firm's representation of the victim injured by the tortfeasor. No lawsuit was filed on the victim's behalf against the tortfeasor, and the victim settled with the tortfeasor's insurer after he discharged the law firm. We hold that an action based upon a charging lien is an in rem proceeding against a particular fund and that when a matter is resolved through a settlement, the fund comes into being at the time the settlement is paid and the release is received. Under these facts, the discharged law firm cannot enforce its charging lien against the tortfeasor's insurer. Accordingly, KNR did not have a viable charging-lien claim against Progressive in this case. We reverse the judgment of the court of appeals and remand the cause to the trial court.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Kisling, Nestico & Redick, L.L.C., Christopher J. Van Blargan, and John Reagan, for appellee.

Collins, Roche, Utley & Garner, Richard M. Garner, and David G. Utley, for appellants, Progressive Max Insurance Company, Progressive Southeastern Insurance Company, and Progressive John Doe Companies.

Reminger Co., L.P.A., and Brian D. Sullivan, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Murray & Murray Co., L.P.A., and Margaret M. Murray, urging affirmance for amicus curiae Ohio Association for Justice.

_____