EDUARDO C. ROBRENO, District Judge.
Defendant Kevin Goodspeed sought medical assistance from a physician for a foot injury. Defendant was a participant covered by an employee benefit plan. Under the benefit plan, Defendant received $ 82,088.36 for his medical expenses. After the medical treatment was concluded, Defendant and his wife sued the treating physician for claims premised on medical malpractice. The case against the physician was settled, resulting in Defendant and his wife receiving a net settlement of $ 304,463.22.
The terms of the benefit plan required subrogation of any recovery from the malpractice action, up to the amount paid by the benefit plan for Defendant's medical costs. Defendant did not repay the benefit plan, but instead deposited the net settlement proceeds into his and his wife's jointly-held bank account. The couple then made various purchases from the account, including a $ 62,000 van.
As administrator of the plan, Plaintiff Board of Trustees of the National Elevator Industry Health Benefit Plan ("the Plan") brought suit under the Employee Retirement *474 Income Security Act (ERISA) seeking reimbursement of the medical benefits it paid on behalf of Defendant pursuant to the benefit plan. In an action brought under the ERISA, the Plan can only obtain equitable relief. Accordingly, a necessary element of the Plan's claim is the existence of one or more specific funds against which an equitable lien could be attached (either because the fund itself is the "thing" at the heart of the equity matter, or the fund is traceable to that "thing").
The Court ordered bifurcated discovery, proceeding first on the issue of whether there is an appropriate fund for an equitable lien, assuming that Plaintiff had a meritorious claim. Discovery on this issue has now been concluded. Defendant has moved for summary judgment, arguing that the Plan has failed to identify an appropriate fund.
The Court finds that there are specific funds against which an equitable lien could be attached through traceability, and therefore will deny Defendant's Motion for Summary Judgment.[1]
I. BACKGROUND
A. Parties and Allegations
Defendant resides in Flushing, New York, and participated in the employee benefit plan administrated by the Plan. ECF No. 1 ¶¶ 2, 5, 8. From late-2013 to mid-2014, Defendant sought medical treatment for heel pain from Dr. Howard Rose, an orthopedist. ECF No. 27-6 ¶¶ 4-5. Defendant claims to have suffered injuries to his Achilles tendon arising from Dr. Rose's treatment. Id. ¶¶ 7-8. In connection with the injuries, and under the terms of the benefit plan, the Plan paid $ 82,088.36 in medical expenses to various medical services providers on Defendant's behalf. ECF No. 1 ¶¶ 9-10.
In September 2016, Defendant and his wife sued Dr. Rose in state court in New York, with Defendant bringing claims of medical malpractice and lack of informed consent, and his wife bringing a claim of loss of consortium. See ECF No. 27-6.[2] In late 2017, they settled their claims, netting $ 304,463.22 after fees and costs were deducted, and the case was discontinued by stipulation on October 6, 2017. ECF No. 27-1 ¶ 9, Ex. B.
The Plan learned about the New York case during its pendency, and on March 3, 2017, notified the couple's attorney, George J. Calcagnini, Esq.[3] of the Plan's lien on the proceeds of any settlement. ECF No. 27 Ex. F. Notwithstanding this correspondence, Mr. Calcagnini distributed to the couple the entire net settlement proceeds and did not submit or withhold any payment to the Plan. ECF No. 27-1 ¶ 9 ; see also ECF No. 27 Ex G.
The Plan filed this action on November 13, 2017. See ECF No. 1. The Plan alleges that the terms of the benefit plan required Defendant to reimburse the Plan for the medical benefits paid from the proceeds of the settlement. Id. ¶ 12. The Plan alleges that Defendant has not done so, and so it is entitled to equitable relief under § 502(a)(3) of the ERISA ( 29 U.S.C. § 1132(a)(3) ).[4] Id. ¶¶ 18, 23.
*475 Defendant filed motions to dismiss or transfer the case, both of which the Court denied. ECF Nos. 3, 13. Because the ERISA allows only for equitable relief, the Plan's claims can only proceed if there is a fund against which equitable relief can be attached. See infra Section II.B. The Court ordered discovery to proceed first on whether such a fund exists.[5] ECF No. 12.
B. Discovery concerning the Settlement
The material facts are undisputed.
As part of the agreement to resolve their claims against Dr. Rose, Defendant and his wife signed a general release. ECF No. 27-1 ¶ 8. "At no time was there ever an allocation of the recovery between [Defendant]'s claims and his wife's claims." Id.
The gross settlement proceeds were sent to Mr. Calcagnini, Esq., a New York attorney who represented Defendant and his wife and who represents Defendant in this action. Id. ¶ 9. "After accounting for his costs of bringing the tort action and his fee for doing so, [Mr. Calcagnini] then remitted a check made payable to [Defendant and his wife] in the net sum of $ 304,463.22." Id.
On October 10, 2017, Defendant and his wife "deposited the check for the net settlement proceeds [totaling $ 304,463.22] into a jointly held bank account with rights of survivorship." Id. ¶ 10. The couple use the joint bank account "for a variety of purposes," including receiving pension payments. Id."[T]he settlement funds from the tort action against Dr. Rose were commingled with various other monies" in the account. Id.
Between October 10, 2017 and May 31, 2018, the couple "spent or [withdrew] from [the joint] account the sum of $ 359,470." Id. ¶ 11. "Of the money withdrawn or transferred out of the [joint] account, [the couple] transferred $ 200,000 into a jointly owned certificate of deposit with rights of survivorship," and "jointly purchased a van for $ 62,000." Id. ¶ 12.
II. LAW
A. Summary Judgment
Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) ; Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 292 (3d Cir. 2012). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505.
In this case, Defendant has sought summary judgment but the Plan has not. Once a party seeks resolution of a question by moving for summary judgment on that question, the court may grant summary judgment against the movant even in the absence of a cross-motion for summary judgment. See Fed. R. Civ. P. 56(f) ; Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 280 (3d Cir. 2010) ("[D]istrict *476 courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.") (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ); see also, e.g., Albino v. Baca, 747 F.3d 1162, 1176 (9th Cir. 2014) ("We have long recognized that, where the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment sua sponte for the nonmoving party."); O'Hara v. Gen. Motors Corp., 508 F.3d 753, 764 (5th Cir. 2007) (Even though a defendant had not moved for summary judgment on particular claims, "[the plaintiffs had] placed these claims at issue by raising them in their ... reply brief to [defendant's] motion for summary judgment ...."). Thus, in a case such as this, if a defendant moves for summary judgment on only one of multiple issues upon which the plaintiff must prevail, but the plaintiff does not cross-file for summary judgment, the Court may enter either summary judgment for the defendant or partial summary judgment for the plaintiff.
B. The ERISA and Equitable Liens
Congress enacted the ERISA "to provide a uniform regulatory regime over employee benefit plans." Aetna Health Inc. v. Davila, 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). In order to effect that goal, the ERISA broadly pre-empts state laws pursuant to § 514(a). Id.; 29 U.S.C. § 1144(a) ; see also N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) ("The basic thrust of the pre-emption clause ... was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans."); John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank, 510 U.S. 86, 99, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) (" '[W]here [state] law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress,' federal preemption occurs.") (quoting Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) ).
Under § 502(a)(3) of the ERISA, only equitable relief, not legal relief, can be granted in a civil suit seeking enforcement of the terms of the plan. Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan, --- U.S. ----, 136 S.Ct. 651, 657, 193 L.Ed.2d 556 (2016).
Historically, equitable relief seeking restitution "typically involved enforcement of 'a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.' " Id. (citing Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) ).
Equitable liens can arise by agreement where, for example, an employee benefit plan requires a beneficiary to convey the proceeds of any third-party settlement to the plan fiduciaries. Id. at 658 (citing Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 363-64, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006) ).
Whether the equitable remedy arises because a defendant misappropriated property from the plaintiff or the parties had an agreement, "all types of equitable liens must be enforced against a specifically identified fund in the defendant's possession." Id. at 659. This rule precludes a plaintiff from enforcing a lien against a defendant's general assets. Id.
*477 The specificity requirement means that a lien can only be enforced "against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds (e.g., identifiable property like a car)." Id. at 658. If a defendant "dissipate[s] the entire fund on nontraceable items, that complete dissipation eliminate[s] the lien." Id. at 659. Non-traceable items include, for example, "services," "consumable items like food," and "travel." Id. at 655, 658.
In sum, when a "defendant once possessed a separate, identifiable fund to which the lien attached, but then dissipated it all on nontraceable items," a plaintiff cannot "enforce any type of equitable lien." Id. at 659. But if the dissipation is less than complete, an equitable lien may be imposed on the remainder of the fund.
III. DISCUSSION
Defendant moved for summary judgment after the parties completed discovery on the existence of a suitable fund. The parties fully briefed the issues, and the motion is ripe for disposition.
Although the Plan did not move for summary judgment, the question of whether or not a fund against which a lien could be attached had been identified was squarely put at issue by Defendant's motion and Defendant has been fully heard on the matter. Resolution of Defendant's motion will determine whether or not a fund exists, and therefore whether or not this case can proceed under the ERISA.
A. Separation
Defendant argues that "there is no separately identifiable fund against which the lien may attach." ECF NO. 27-2 at 12 (emphasis added). "The use of words is to express ideas." The Federalist No. 37, at 229 (James Madison) (Clinton Rossiter ed., 1961). Here, Defendant uses "separate" to try to seed the idea that the fund must be entirely separate from anything else, i.e., some type of stand-alone fund. The argument is erroneous and not supported by the case law cited by Defendant.
The concept of equitable relief is premised on the allegation that a defendant holds or at one time held a specific thing over which a claimant had some claim, in whole or in part; the claimant is not seeking relief from the defendant's other property (the general assets). Montanile, 136 S.Ct. at 658-59. If "separation" were a necessary fact for the imposition of an equitable lien, a claimant could never obtain such a lien over a settlement which either exceeds the amount of benefits paid or includes monies for other claims brought against a third party who provided the settlement funds. Moreover, where a defendant converts the specific thing into something else, perhaps successively several times over, the question becomes whether the defendant's current possessions are traceable to the original, specific thing. The law does not require a claimant to meet Defendant's "separate-fund" test.
The Supreme Court has spoken on the matter. In Montanile, the administrator of a benefit plan sought reimbursement of the benefit plan's payment of approximately $ 120,000 in medical expenses on behalf of a participant who was injured by a drunk driver. 136 S.Ct. at 655. The participant sued the drunk driver, ultimately receiving a $ 500,000 gross settlement. Id. at 656. Prior to the participant receiving the settlement funds, the administrator informed the participant's attorney of the subrogation clause in the benefit plan and that the administrator was seeking reimbursement. Id. The participant's attorney refused to provide any reimbursement and informed the administrator that the funds would be transferred to the participant unless the administrator objected. Id. The *478 attorney then transferred the settlement funds to the participant. Id.
Six months later, the administrator sued the participant under the ERISA. Id. At summary judgment, the district court rejected the participant's argument that he had spent all of the funds and "there was no specific, identifiable fund separate from his general assets" against which an equitable lien could be enforced. Id. The Eleventh Circuit affirmed, reasoning that even if the participant had dissipated the funds after the lien had attached, the dissipation did not destroy the underlying reimbursement obligation, and the administrator could recover out of the participant's general assets. Id.
The Supreme Court reversed the Eleventh Circuit. Id. at 657. The Court "consider[ed] what happens when a participant obtains a settlement fund from a third party, but spends the whole settlement on nontraceable items ...." Id. at 655. The Supreme Court discussed its previous ERISA jurisprudence concerning whether a claimant was bringing an allowed equitable claim or a forbidden legal claim. Id. at 657-58. The Supreme Court explained that the prior cases did not resolve the circumstances where a participant "who once possessed the settlement fund [had] dissipated it all," leaving the administrator only able to try to make a claim against the participant's "general assets." Id. at 658.
The Supreme Court turned to "standard equity treatises," and time-and-again stated that the lien was destroyed only when a participant expended the "entire fund" on "non-traceable" items. Id. at 658-59.
The holding of Montanile is clear -- only complete dissipation of the specifically identifiable fund on nontraceable items will prevent the imposition of an equitable lien:
We hold that, when a participant dissipates the whole settlement on nontraceable items, the fiduciary cannot bring a suit to attach the participant's general assets under § 502(a)(3) because the suit is not one for "appropriate equitable relief." In this case, it is unclear whether the participant dissipated all of his settlement in this manner, so we remand for further proceedings.
Id. at 655. Thus, to the extent any traceable item exists and is in a defendant's possession, an equitable lien may be attached if the claimant prevails on the merits.
B. Commingling and Tenancy by the Entireties/Joint Tenancy with Rights of Survivorship
Defendant argues that by depositing the check for the net proceeds of the settlement into his and his wife's joint account, the specifically identifiable fund has been dissipated. Defendant relies on the reasoning of Carpenter Technology Corp. v. Weida, 300 F.Supp.3d 663 (E.D. Pa. 2018). ECF NO. 27-2 at 13-14. The holding in Carpenter is that the act of depositing a settlement into a joint checking account converts the specifically identifiable fund into general assets against which an equitable lien cannot be attached. See 300 F.Supp.3d at 671-72. Respectfully, the Court is not persuaded that the holding of Carpenter rests on firm ground.
First, the holding does not sit well with the key inquiry into traceability, which considers whether dissipation has occurred by spending the fund on nontraceable items, such as services, travel, or food. Montanile, 136 S.Ct. at 655, 658.
It is understood that equitable liens can only be attached to traceable items. The fund in Carpenter was not "spent" on nontraceable items such as services, food, or travel that resulted in dissipation of the fund. Rather, the fund was "spent" on a bank balance, a traceable asset. Indeed, a defendant can "spend" a fund on acquiring *479 any type of asset, whether it is a set of books containing the general correspondence of President John Tyler, an antique Underwood typewriter, or a BMW motorcycle. The dispositive issue is the traceability of the later-acquired items to the original fund, and all of the foregoing are examples of non-consumable, non-service, and non-travel items that are traceable to the specific fund.
Second, the commingling argument based on Carpenter also runs contrary to the Supreme Court's reasoning in Sereboff. See 547 U.S. at 362-63, 126 S.Ct. 1869. In Sereboff, the plan participants were a husband and wife who had been injured in an automobile accident. Id. at 359-60, 126 S.Ct. 1869. The participants sued multiple third parties, and during the pendency of the litigation the plan administrator informed the participants' attorney that the administrator claimed a lien over $ 74,869.37 paid to the medical services providers on the participants' behalf. Id. at 360, 126 S.Ct. 1869. The participants refused to reimburse the plan, and the administrator filed the federal lawsuit. Id. The parties stipulated that the participants would preserve the lien amount in an "investment account" until the case was finally resolved. Id. Importantly, the investment account held other monies. See Mid Atl. Med. Servs., LLC v. Sereboff, 407 F.3d 212, 218 (4th Cir. 2005) ("By the stipulation ..., $ 74,869.37 of the settlement funds are preserved by the [participants] in their investment accounts. Although the funds have been placed in accounts with the [participants]' other monies, they can 'clearly be traced to particular funds' recovered in the [state] litigation." (citing Knudson, 534 U.S. at 213, 122 S.Ct. 708 ) ).
The Supreme Court held that the portion of the settlement over which the administrator had placed a lien was still within the possession and control of the participants, even though the funds were held in an investment account along with other funds. Therefore, there was no impediment to obtaining the money through equitable relief. Sereboff, 547 U.S. at 362-63, 126 S.Ct. 1869. The Supreme Court rejected the participants' attempts to construe as legal relief the administrator's suit to obtain a "portion of the tort settlement" that was due to the plaintiff "under the terms of the ERISA plan, set aside and preserved [in the defendant's] investment accounts." Id.
Third Circuit authority also rebuts the commingling argument. In an albeit non-precedential opinion but one that post-dates Carpenter, the Third Circuit applied Sereboff in U.S. Renal Care Inc. v. WellSpan Health, 709 F. App'x 160 (3d Cir. 2018). In Renal Care, the Third Circuit stated that traceability was not lost when moneys were commingled with other funds because the "particular share" could still be identified. Renal Care, 709 F. App'x at 161-62 (citing Sereboff, 547 U.S. at 362-63, 364-65, 126 S.Ct. 1869 ; Montanile, 136 S.Ct. at 660 ). The Third Circuit recognized the reasoning in Sereboff as a rejection of the same type of commingling argument advanced by Defendant here.
Finally, Defendant claims that because the settlement funds were deposited into a joint account owned by him and his wife, creating a joint tenancy with rights of survivorship under New York law, the settlement funds are immune to the reach of the Plan. See ECF No. 27-2 at 12-14. Defendant relies solely on Carpenter which rested on well-settled principles of Pennsylvania law which insulate debtors from the reach of judgment creditors by creating the legal entity of a tenancy by the entirety which is separate and apart from the individual spouses.
But reliance on authorities addressing debtor-creditor law is inapposite here. The *480 Plan is not a creditor seeking to enforce a judgment against a debtor and to obtain relief from the debtor's general assets. Rather, the Plan seeks to attach an equitable lien upon traceable funds acquired by Defendant prior to the creation of the purported joint tenancy with rights of survivorship. See Glen Falls Indem. Co. v. Golden, 148 F.Supp. 41, 42 (D.D.C. 1957) (permitting attachment of an equitable lien against residence held by the entirety of husband and wife, when the purchase price of the residence was paid with funds misappropriated by the husband); see also Watters v. DeMilio, 16 Pa. D. & C.2d 747, 751 (Pa. Com. Pl. 1959) (allowing attachment of a bank account held as a tenancy by the entireties by the defendant and his wife, when the insolvent defendant endorsed his paychecks to his wife who then deposited the checks into the account); Patterson v. Hopkins, 247 Pa.Super. 163, 371 A.2d 1378, 1382 (1977) (denying an entireties defense and allowing a levy on "a checking account, dump truck, covered wagon trailer, two boats, boat trailer, and tarpaulin," all of which were held by the entireties by defendant and his wife, when the entireties were created by defendant's fraudulent conveyances).
This is so because, to the extent an equitable lien attaches to the fund and a defendant has knowledge of that lien, the defendant cannot transfer that property to a joint tenancy or entireties in order to prevent the plaintiff's assertion of rights.[6] The party against which an equitable lien (or constructive trust) is asserted acts as trustee for the fund at issue. That party has no right to the fund, and cannot assert any right to the fund by conveying it to a tenancy by the entireties.[7] Erie Cnty. v. Lamberton, 297 Pa. 406, 147 A. 86, 88 (1929) (" 'It is a familiar principle that neither a trustee nor any in privity with him can acquire any right by a breach of the trust', and tenants by entireties are in contemplation of law in privity." (citations omitted) ).
Defendant calculated that under New York law, joint tenancy with rights of survivorship provides the same or similar types of protection as Pennsylvania law on tenancy by the entireties. Even if the protections were the same, as Defendant argues, it makes no difference to the outcome here because, as pointed out above, a tenancy by the entireties in this case would not shield the settlement from the reach of the equitable lien.
Here, both the $ 200,000 certificate of deposit and the $ 62,000 van are traceable to the settlement fund. Neither of these could be characterized as nontraceable items such as services, food, or travel. The fact that both items first passed through the joint account owned by Defendant and his wife does not confer "nontraceable" status upon these two items.
C. Allocation
Finally, Defendant argued that the lack of allocation in the settlement *481 fund defeats the equitable lien. See ECF No. 27-2 at 15. In particular, Defendant argues that the settlement fund cannot be the initial fund because there was no allocation of the settlement between the two claims brought by Defendant (medical malpractice and lack of informed consent) and the one claim brought by his wife (loss of consortium). Id.
The Court rejects this argument. It is undeniable that at least part of the settlement fund was derived from Defendant's claims in the New York litigation. Therefore, an equitable lien can be attached to the settlement fund and any items traceable to it. See Martin Sprocket & Gear, Inc. v. Durrette, 2008 WL 11334180, at *9 (N.D. Ga. 2008).
Now that traceable assets have been identified, the Court finds that the allocation of the settlement fund is now properly at issue. Because the certificate or deposit and van are traceable to the settlement fund, the issue of allocation must now be addressed in the merits briefing at the conclusion of all remaining discovery in this case. Therefore, the Court will give the parties an opportunity to engage in discovery (including appropriate expert discovery if warranted) and will address allocation in combination with the merits.
IV. CONCLUSION
There is no genuine dispute of material fact concerning the existence of funds that are traceable to the settlement proceeds against which an equitable lien can be imposed. The Court finds that there are specific funds against which an equitable lien could be attached through traceability, namely the $ 200,000 certificate of deposit and the $ 62,000 van. Accordingly, Defendant's Motion for Summary Judgment will be denied, and the Plan will be granted partial Summary Judgment.
The case will proceed to discovery on the issue of allocation and on the merits of Plaintiff's claim.
ORDER
AND NOW , this 1st day of May, 2019 , upon consideration of Defendant's Motion for Summary Judgment (ECF No. 27 ), and Plaintiff's Motion for Leave to File a Sur-Reply Brief (ECF No. 35 ), for the reasons set forth in the accompanying memorandum, it is hereby ORDERED as follows:[8]
1) Defendant's Motion for Summary Judgment (ECF No. 27 ) is DENIED ;
2) Plaintiff's Motion for Partial Summary Judgment is GRANTED;
3) Plaintiff's Motion for Leave to File a Sur-Reply Brief (ECF No. 35 ) is GRANTED ; and
4) An in-person conference will be held to discuss scheduling for further discovery, dispositive motions, and a trial date. The parties are to appear on May 10, 2019 at 10:00 a.m. before the Honorable Eduardo C. Robreno in Courtroom 15A, U.S. Courthouse, 60l Market Street, Philadelphia, Pennsylvania .
AND IT IS SO ORDERED.

The case will proceed to discovery on the Plan's claim that it has a valid lien to enforce, and on the issue of allocation discussed later in this memorandum.

Goodspeed v. Rose, No. 805368/2016 (N.Y. Sup. Ct. Sept. 14, 2016).

George J. Calcagnini, Esq. also represents Defendant in this action.

Section 502(a)(3) of the ERISA states:
A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
(emphasis added).

The Court's Order stated that discovery was "limited to the issues of (i) the existence of a separately-identifiable fund, and (ii) the possession or control over all or part of a separately-identifiable fund by the Defendant." ECF No. 12 ¶ 6.

This principle applies with equal force even in debtor-creditor cases, where "the use of a joint account creating a tenancy by the entireties cannot be used for the purpose of defrauding creditors of [one spouse]." Watters, 16 Pa. D. & C.2d at 751 ; see also Patterson, 371 A.2d at 1382 ("Where a husband or wife conveys his or her individual property to a tenancy by the entireties in fraud of creditors, the defrauded creditors may execute on the property so transferred.").

To the extent Defendant might argue that his wife had no knowledge of the Plan's purported equitable lien, even if true, she would be unjustly enriched by Defendant's action. Thus, assuming the equitable lien is valid, "[i]n equity and good conscience she should be required to refund the amount of unjust enrichment." Glen Falls, 148 F.Supp. at 43.

Discovery in this case was bifurcated. See ECF No. 12. Defendant's Motion for Summary Judgment was limited to the issue of the existence of a fund against which an equitable lien could be attached. As explained in the Memorandum filed this same day, the Court's ruling denying Defendant's Motion for Summary Judgment effectively grants partial summary judgment to Plaintiff on the issue which Defendant had put before the Court.
The case will continue to discovery on the remaining issues as discussed in the Memorandum.